**DICO, INC., Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 93–5124.**

United States Court of Appeals, Federal Circuit.

Feb. 24, 1995.

Charles F. Lettow, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, argued, for plaintiff-appellant. With him on the brief were Michael R. Lazerwitz and Michael A. Mazzuchi.

Robert L. Klarquist, Atty., Environment & Nat. Res. Div., Dept. of Justice, Washington, DC, argued, for defendant-appellee. With him on the brief were Peter R. Steenland, Jr., Acting Asst. Atty. Gen., Environment & Nat. Res. Div., Jacques B. Gelin and Marc A. Smith.

Before RICH, PLAGER and LOURIE, Circuit Judges.

PLAGER, Circuit Judge.

Appellant Dico, Inc. ("Dico") pled in the United States Court of Federal Claims[1] a cause of action under the Fifth Amendment to the United States Constitution, seeking compensation for certain expenses Dico incurred pursuant to an environmental cleanup order issued by the United States Environmental Protection Agency ("EPA"). At the time Dico filed suit in the Court of Federal Claims, it had pending a District Court action. In that action, Dico sought reimbursement for those same expenses under § 106(b) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), codified as amended at 42 U.S.C. § 9606(b) (1988).[2] The Court of Federal Claims, on motion by the Government, held that it lacked jurisdiction over Dico's action under 28 U.S.C. § 1500, and dismissed the action without prejudice. We affirm.

---

1. Effective October 29, 1992, the United States Claims Court became the United States Court of Federal Claims. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516. For simplicity, we refer to the court throughout by its new name.

2. Unless otherwise indicated, statutory references are to the 1988 edition of the United States Code.

## BACKGROUND

Pursuant to its authority under CERCLA, EPA ordered Dico to undertake certain measures to clean up contaminated groundwater at a site in which Dico operated a manufacturing facility. Although it informed EPA that certain contamination had originated with sources other than Dico, Dico undertook at its expense the cleanup as ordered, which included installing groundwater extraction and monitoring wells and related equipment and treating the extracted water. Dico also purchased and obtained access to third party property to carry out the groundwater treatment. During the operation of this system, Dico concluded that contamination from a separate source north of its facility ("the northern plume") was being induced toward and captured by its system, and that Dico therefore was providing a cleanup remedy for contamination for which it was not liable under CERCLA. *See* 42 U.S.C. § 9607(b) (no liability when release or threat of release of hazardous substance and resulting damage are caused solely by act or omission of independent third party).

Dico therefore filed with EPA a claim for reimbursement of the portion of its cleanup costs attributable to the northern plume. *See* 42 U.S.C. § 9606(b)(2)(A), (C) & § 9606 note. EPA denied the claim on the ground that Dico was ineligible to seek reimbursement because EPA's Order had been issued before the enactment of the reimbursement provisions.

Dico then filed, as permitted under CERCLA, an action in the District Court for the Southern District of Iowa. 42 U.S.C. § 9606(b)(2)(B). In its complaint to the District Court, Dico prayed for reimbursement from the Government of "$764,134.08 in response costs related to the northern plume and such additional costs related to the northern plume as Dico has incurred or may

incur ... [to] the date of judgment," as well as a declaration that the Government was obliged under § 106(b) to reimburse Dico for future response costs. In addition, Dico sought a declaration that, "to the extent reimbursement for past and future response costs is not available under Section 106(b)," the Government was obliged to reimburse Dico under the Fifth Amendment's Due Process and Takings Clauses.[3]

Shortly after Dico filed its complaint in the District Court, it filed a complaint in the Court of Federal Claims.[4] The portions of the complaint setting forth the underlying facts concerning the cleanup and northern plume were in all material respects identical to those of Dico's District Court complaint. The complaint then set forth two counts, one asserting entitlement to relief under the Due Process clause of the Constitution, and one under the Takings clause. The complaint closed with a prayer for reimbursement of "$764,134.08 in response costs related to the northern plume and such additional costs related to the northern plume as Dico has incurred or may incur ... [to] the date of judgment." Dico also included a prayer that the court declare that the Government was obliged under the Fifth Amendment to reimburse Dico for future response costs related to the northern plume.

The Government moved to dismiss the complaint on the basis of 28 U.S.C. § 1500, which provides that

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States....

At the time the Court of Federal Claims considered the Government's motion, the court had before it our *in banc* decision in *UNR Indus., Inc. v. United States,* 962 F.2d

---

3. The district court dismissed Dico's declaratory relief claims and granted the Government summary judgment on the statutory claims. *Dico, Inc. v. Diamond,* 821 F.Supp. 562 (S.D.Iowa 1993). Dico appealed to the Eighth Circuit, which reversed the district court's ruling on the statutory claims, holding that Dico was eligible to petition EPA under § 106(b) for reimbursement. *Dico, Inc. v. Diamond,* 35 F.3d 348, 353

(8th Cir.1994). The Eighth Circuit did not address the dismissal of the claims for declaratory relief under the Fifth Amendment. *Id.*

4. On the significance of the order of filing, *see Tecon Engineers, Inc. v. United States,* 343 F.2d 943, 170 Ct.Cl. 389 (1965), *cert. denied,* 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966).

1013 (Fed.Cir.1992) (*in banc*). The Supreme Court had not yet handed down its review of *UNR, Keene Corp. v. United States,* —— U.S. ——, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993), nor had we yet issued our clarification of the scope of § 1500 in *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545 (Fed.Cir.1994) (*in banc*).

On the basis of the caselaw before it, the Court of Federal Claims granted the motion to dismiss, without prejudice. The court found that the two actions undisputedly arose out of the same operative facts, as defined in *Johns–Manville Corp. v. United States,* 855 F.2d 1556 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989), and concluded that under *UNR,* the later-filed suit in the Court of Federal Claims was barred.

Dico appealed to this court. Between the time of the Court of Federal Claims' judgment and opinion, and oral argument in this court, both *Keene* and *Loveladies* were decided. Dico argues here, first, that these cases changed the law of § 1500 as it was applied by the Court of Federal Claims, and, second, that as a result Dico escapes the clutches of § 1500. Dico is correct on the first point, but not the second.

### DISCUSSION

■ Dico argues that it pursued different relief in the Court of Federal Claims than it did in the District Court. The Court of Federal Claims rejected the premise that seeking different relief precluded the operation of § 1500. The court found that our decision in *UNR* had purported to overrule the line of cases, exemplified by *Casman v. United States,* 135 Ct.Cl. 647 (1956), establishing that premise. Our decision in *Loveladies,* however, made it clear that *Casman* is still good law and that different relief means different claims, which in turn means that § 1500 does not apply. Accordingly, Dico is correct that if it had sought different relief in its two actions, dismissal of the Court of Federal Claims suit under § 1500 would have been improper.

■ Dico, however, did not pursue different relief in its two actions. Dico argues that its District Court action sought reimbursement under CERCLA of monies expended pursuant to EPA order and for which Dico was not actually liable, while its Court of Federal Claims action sought money damages for the deprivation of its property rights. In its briefs, and again at oral argument, Dico identified this distinction as the difference between money damages and statutory reimbursement, the latter of which Dico characterizes as "monetary relief."

Dico cites as authority for this distinction *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). In that case, the Supreme Court upheld the jurisdiction of a district court under Section 702 of the Administrative Procedure Act, 5 U.S.C. § 702, over a state's suit against the federal government seeking to overturn the disallowance of reimbursement for certain expenditures under the state's Medicaid program. The Government had argued that the suit was one for money damages in excess of $10,000 and thus, under the Tucker Act, the exclusive forum was the Court of Federal Claims. *See id.* at 890 & n. 14, 108 S.Ct. at 2730 & n. 14.

The funding scheme at issue involved advanced quarterly payments by the federal government to the state to help fund its Medicaid program. The state sought to prevent the federal government from excluding the expenditures at issue from future reimbursement and from adjusting subsequent grants to recover federal monies already spent on such expenditures. Given the prospective nature of the relief sought and the "intricate, ongoing relationships" between the state and federal governments "involv[ing] constantly shifting balance sheets," the Court distinguished the "monetary aspects of the relief" sought by the state from traditional "money damages" compensating a past loss. *Bowen,* 487 U.S. at 893, 900–01 n. 31, 904 n. 39, 905–06 & n. 42, 108 S.Ct. at 2731, 2735 n. 31, 2737 n. 39, 2737–38 & n. 42.

Whatever may be the precedential scope of the *Bowen* Court's distinction in the statutory law of federal entitlement programs administered through advanced payment streams, *see* 487 U.S. at 917–20, 108 S.Ct. at 2744–45 (Scalia, J., dissenting) ("monetary

relief" sought is simply past due sums which compensate for loss resulting from breach of promise to pay, i.e., traditional damages), that distinction has no relevance here. Dico primarily seeks compensation for losses already incurred, and not the type of prospective relief at issue in *Bowen*. Nor does Dico's prayer for a declaration of entitlement to future response costs make the case analogous to the claims at issue in *Bowen* (even assuming that such declaratory relief is available under CERCLA's reimbursement scheme). The statute provides payment for costs already incurred. Section 106(b)(2)(A) provides that a party may petition for reimbursement of the "reasonable costs" of a response action ordered by the EPA, *"within 60 days after completion of the required action."* 42 U.S.C. § 9606(b)(2)(A) (emphasis added). Correspondingly, § 106(b)(2)(C) requires that a party seeking reimbursement prove the reasonableness of its costs in light of the action required. *Id.* § 9606(b)(2)(C).

Clearly, Dico's two actions seek the "same or ... overlapping relief," *Loveladies,* 27 F.3d at 1554. In its CERCLA suit, Dico seeks money from the Government for a portion of its overall remediation costs. In the Court of Federal Claims suit, Dico seeks money from the Government for the same expenses, in exactly the same amount, on Due Process and Takings theories. That the legal theories are different does not mean that the relief is different.

At oral argument, however, Dico urged a basis for distinguishing its relief that was not enunciated in its briefs. Dico argued that its Takings count in the Court of Federal Claims was not for the costs of the remediation, but for the taking of other, separate property interests, such as the value of property reserved or purchased for the placement of wells and other Government impositions.[5] Dico points to this court's opinion in *Hendler v. United States,* 952 F.2d 1364 (Fed.Cir. 1991) to illustrate such a cause of action, and seeks to distinguish this from its Due Process claim under *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco,* 496 U.S.

18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), which purportedly covered the costs of remediation, and which Dico equated in this respect with its District Court reimbursement claim. Dico argues that the Eighth Circuit's decision finding Dico entitled to petition EPA for CERCLA reimbursement, *see supra* note 2, renders inoperative its *"McKesson"* claim for remediation costs, and leaves only its *"Hendler"* claim for a taking of Dico's "separate property interests."

The plain language of the complaint Dico filed in the Court of Federal Claims belies any such distinction. Dico's Due Process claim seeks reimbursement based on an unlawful deprivation of property—namely, EPA's "requiring it to incur response costs to remedy contamination caused by others and to use its own property and to take actions on and acquire the property of others for that purpose." The Takings count states that "EPA's requirement that Dico address the ... contamination caused by others by (1) constructing on its property and operating a remedial system for such plume of contamination, (2) installing monitoring wells on its property and the property of others, (3) conducting monitoring of wells on its property and the property of others, and (4) acquiring the property of others, constitutes a taking of property...." The two counts obviously were pled in the alternative, and seek, along with Dico's District Court action, compensation for the portion of its groundwater treatment system costs attributable to contamination from the northern plume.

■ As this court stated in *UNR*, and the Supreme Court affirmed in *Keene,* the § 1500 bar rises, if at all, at the time the complaint is filed in the Court of Federal Claims, *see UNR,* 962 F.2d at 1022–24; *Keene,* — U.S. at —, 113 S.Ct. at 2041, and is based on well-pled allegations. As the Government correctly asserts, it is too late for Dico to attempt at this stage to recast, in light of the Eighth Circuit's decision, the relief sought by Dico's Takings and Due Process counts. The factual allegations, including especially the relevant cost elements, and

---

5. Dico did not assert, and there is nothing to suggest, that these items are not reimbursable

under CERCLA § 106(b)(2).

the prayers for monetary relief in the two actions are essentially the same. Reference to different legal theories, whether based on case law or statute, is not dispositive; the facts alleged and the nature of the relief sought control.

Even Dico's declaratory judgment prayers sought the same relief. In the prayer for relief in its District Court suit, Dico asked that the court "declare that, to the extent reimbursement for past and future response costs is not available under Section 106(b), defendants are obliged to provide reimbursement under the Fifth Amendment to the Constitution of the United States." Similarly, in its Court of Federal Claims complaint, Dico prayed that the court "declare that defendant is obliged under the Fifth Amendment to the Constitution of the United States to reimburse Dico for future response costs related to the northern plume." [6]

*UNR* established that § 1500 is a battle of pleadings. *Loveladies* further established that if the Court of Federal Claims complaint pleads facts which demonstrate a different legal injury from that pursued in another court, or seeks different relief, it involves a different claim which § 1500 does not bar. If a plaintiff in fact has two different claims, as defined in *Loveladies,* then it is the responsibility of the plaintiff to allege, clearly and with specificity, that different claims are involved in its two actions. An analysis of this case shows that the same claims were made by Dico in both actions. Dico's two complaints, which obviously copied each other with only minor or irrelevant variations, do not indicate otherwise or identify the distinction that Dico now claims to have intended.

Dico, in its brief, argued presciently that *Casman* still lived, and sought to bring itself within the scope of that aspect of the § 1500 rule. For the reasons we have explained, however, Dico failed to do so. Although the trial court granted the Government's motion to dismiss without prejudice based on law that was later changed, that ruling nevertheless was correct, and is

**AFFIRMED.**

---

6. Despite the prayer in its complaint in the Court of Federal Claims, in its brief to this court Dico acknowledged that the Court of Federal Claims is without jurisdiction to grant the prayed-for declaratory relief. Likewise, the District Court ruled that the thrust of Dico's declaratory judgment claim in its court under the Fifth Amendment was to obtain money, and therefore the claim impermissibly intruded upon the exclusive jurisdiction of the Court of Federal Claims. *Dico, Inc. v. Diamond,* 821 F.Supp. 561, 570–71 (S.D.Iowa 1993). As noted above, the Eighth Circuit did not reach this issue on appeal. *Dico, Inc. v. Diamond,* 35 F.3d 348, 353 (8th Cir.1994); *see* note 2, *supra.* In view of our disposition of this matter based on the claims that expressly seek money, we need not concern ourselves further with the consequences under § 1500 of pleadings which seek the same relief but are not well-pled.