**J. Leonard SPODEK, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 98–594C.**

United States Court of Federal Claims.

May 25, 1999.

issue at this time.

Randy Crane, Atlas & Hall, L.L.P., McAllen, Texas, attorney of record for the plaintiff.

Doris S. Finnerman, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom was David M. Cohen, Director, Commercial Litigation Branch, attorneys of record for the defendant.

1. Other Spodek cases currently filed in this court include the following: *J. Leonard Spodek v. United States*, No. 98–148C (the United States Court of Federal Claims, filed February 25, 1998); *J. Leonard Spodek v. United States dba Nationwide Postal Management v. United States*, No. 98–686C

## OPINION

HORN, Judge.

### FACTS

The plaintiff, Leonard Spodek, leases buildings to the United States Postal Service (USPS) for use as post offices.[1] The property which is the subject of the above captioned complaint is known as the Highland Hills Station, located in San Antonio, Texas. The initial period of the lease of this property was from July 1, 1986 through June 30, 1991, with two 5–year renewal options. The plaintiff alleges that the USPS breached the lease of the Highland Hills Station through failure to pay the rent due under the lease since February 1997, instead applying the rental payments to charges imposed by the USPS arising under other unrelated leases. Because of the USPS' offset action, Mr. Spodek alleges that he terminated the lease on September 2, 1997, and provided notice to the USPS to vacate the lease premises.

According to a letter sent by prior counsel for the plaintiff to the Postmaster General on September 2, 1997:

There is no provision in any of the affected leases allowing the Postal Service to off-set rent due on one lease from rental payments due under other leases. Therefore, the Postal Service has breached each of the leases from which rental payments have been "off-set" instead of paid. Consequently, the Spodeks have terminated the following 40 leases, including all existing or future extension options and all purchase options, and so inform you:

\* \* \* \* \* \*

7. San Antonio, Texas, Highland Hills, dated July 1, 1986;

\* \* \* \* \* \*

My client respectfully expects the Postal Service to vacate all of the above premises within 30 days of this letter. Please be advised that after the expiration of 30 days

(the United States Court of Federal Claims, filed August 26, 1998); *Leonard Spodek v. United States*, No. 98–693C (the United States Court of Federal Claims, partially transferred from the Southern District of Texas, August 28, 1998).

following this letter, should the Postal Service fail to vacate the premises listed above, rent at the hold-over rate of $2.50 per square foot, per month, or the highest rate permitted by applicable law if less, will be charged for occupancy of any of the premises not vacated.

The plaintiff alleges that in spite of this notice, the USPS continues to remain on the Highland Hills premises. The plaintiff seeks money damages and other relief.

A complaint regarding the Highland Hills Station complaint was initially filed in a State court, in San Antonio, Texas, on or about February 5, 1998 (*Leonard Spodek v. United States Postal Service*, No. 40–E–98–00096–01 (Bexar County, Tex.)). The suit was removed to the United States District Court for the Western District of Texas, San Antonio Division (*J. Leonard Spodek v. United States Postal Service*, Civ. No. SA–98–CA–138–EP (W.D.Tex.)). On May 12, 1998, Judge Prado of the Western District of Texas, San Antonio ordered part of the case transferred to the United States Court of Federal Claims. *See* Rule 84(a) of the Rules of the United States Court of Federal Claims (RCFC). The transfer order of the United States District Court, Western District of Texas, San Antonio Division, provided that "Plaintiff's claims for past rent must be transferred to the United States Court of Federal Claims. However, Plaintiff's claims for eviction of Defendant and repossession of the premises are tort claims and therefore this Court [the United States District Court for the Western District of Texas, San Antonio Division] is not divested of subject matter jurisdiction over them."[2] The case file was forwarded to the Court of Federal Claims and filed in this court on July 21, 1998. The plaintiff subsequently filed a first amended complaint in this court on October 21, 1998.

Mr. Spodek also filed another suit in a Texas State court on April 22, 1998, this time in the Judicial District Court of Hidalgo County (*J. Leonard Spodek and Rosalind Spodek v. United States Postal Service and*

*Marcus Nielsen,* Cause No. C–2132–98–D (Hidalgo County, Tex.)). That case was removed to the United States District Court for the Southern District of Texas, McAllen Division, on June 11, 1998, and remains pending in that court (*J. Leonard Spodek and Rosalind Spodek v. United States Postal Service and Marcus Nielsen,* Civ. Action No. M–98–119 (S.D.Tex.)).[3]

The Southern District of Texas, McAllen Division complaint alleges that the USPS recouped charges levied against the McAllen facility by withholding rental payments due for a number of other facilities, including the Highland Hills Station, which is the subject of the complaint removed to the United States District Court for the Western District of Texas, San Antonio Division, and transferred in part to this court. The Highland Hills Post Office facility was one of 18 Spodek properties listed in the Southern District of Texas, McAllen Division complaint leased to the USPS which were allegedly used by the USPS to recoup these McAllen facility charges. In the Southern District of Texas complaint the Spodeks allege that the USPS charged them $361,769.85 in costs associated with the McAllen, Texas post office facility, including overpayment of rents already due to the USPS using only a portion of the McAllen facility, the USPS' dissatisfaction with the McAllen facility, and charges for renovating and moving to another post office facility.

Similarly, the plaintiff alleges in the same Southern District of Texas, McAllen Division complaint that the USPS replaced the roof of the Pennsauken, Pennsylvania Post Office leased facility, and offset $171,386.53 in costs on 13 other leases, including, once again, the Highland Hills Station.

Defendant moves for a dismissal of the Court of Federal Claims complaint, Case No. 98–594C, under 28 U.S.C. § 1500 '(1994). The defendant contends that because the Southern District of Texas, McAllen Division suit is a "pending" suit for purposes of the

---

**2.** On September 24, 1998, the Western District of Texas dismissed, without prejudice, the claims remaining in that court.

**3.** On May 13, 1999, a mediator selected by the parties submitted a memorandum to the Southern District of Texas, indicating that alternate dispute resolution had been unsuccessful. The case is still pending in that court.

statute, the "[p]laintiff's district court complaint sets forth identical operative facts as the facts alleged in the Court of Federal Claims complaint, and both complaints seek the same relief," this court is divested of jurisdiction.

## DISCUSSION

The defendant has filed a motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.*

The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss has been articulated by the United States Supreme Court, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 746; *Alaska v. United States*, 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alaska v. United States*, 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, as amended, 28 U.S.C.A. § 1491 (West 1994 & Supp.1998), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right that is enforceable against the United States for money damages. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (citing *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan*, 424 U.S. at 398, 96 S.Ct. 948. "[I]n order for a claim against the United States founded on statute or regula-

tion to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States*, 17 Cl.Ct. 475, 479 (1989), *aff'd*, 904 F.2d 45 (Fed.Cir.1990) (citations omitted); *see also United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (citing *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States*, 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied*, 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

In support of its motion to dismiss, the defendant raises the issue of the jurisdictional bar of 28 U.S.C. § 1500, which provides that the United States Court of Federal Claims shall not have jurisdiction of a claim also pending against the United States in another court. Defendant contends that

> At the time Mr. Spodek filed his First Amended Complaint, Mr. Spodek's complaint was pending before the district court in Texas. As revealed by a comparison of the complaint in this case with the complaint in the Texas action, the claim in this Court is clearly based upon the same operative facts as the Texas complaint. The claims are based upon (1) debts owed by Mr. Spodek to the Postal Service arising out of one or more lease agreements, and (2) the Postal Service's offset of these debts against the rent owed by the Postal Service on the Highland Hills lease. Further, both the complaint in this case and the complaint in the Texas action seek the same relief, *i.e.*, money damages. Accordingly, because 28 U.S.C. § 1500 divests this Court of jurisdiction, Mr. Spodek's complaint should be dismissed.

The statute in question, 28 U.S.C. § 1500, provides as follows:

> Pendency of claims in other courts
>
> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the

time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

Congress has been given authority, pursuant to the United States Constitution, to define the jurisdiction of the lower federal courts. *See Keene Corp. v. United States*, 508 U.S. 200, 207–08, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). Moreover, "[t]he limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

According to the United States Court of Appeals for the Federal Circuit, the purpose of Section 1500 is to "force an election where both forums could grant the same relief, arising from the same operative facts." *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1564 (Fed.Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Otherwise stated, "[t]he purpose of section 1500 is to prohibit the filing and prosecution of the same claims against the United States in two courts at the same time." *Id.* at 1562. In *Keene Corp. v. United States*, the United States Supreme Court commented on the difficulty of applying 28 U.S.C. § 1500:

> The statutory notion of comparable claims is more elusive. By precluding jurisdiction over the claim of a plaintiff with a suit pending in another court "for or in respect to" the same claim, § 1500 requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit. The exact nature of the things to be compared is not illuminated, however, by the awkward formulation of § 1500.

*Keene Corp. v. United States*, 508 U.S. at 210, 113 S.Ct. 2035.

In *Johns–Manville*, the United States Court of Appeals for the Federal Circuit provided guidance regarding how courts should interpret the term "claim" in the context of 28 U.S.C. § 1500:

Both the decision in *British American* [*British American Tobacco Co. v. United States*, 89 Ct.Cl. 438 (1939), *cert. denied*, 310 U.S. 627, 60 S.Ct. 974, 84 L.Ed. 1398 (1940)] and the decision in *Los Angeles* [*Los Angeles Shipbuilding & Drydock Corp. v. United States*, 138 Ct.Cl. 648, 152 F.Supp. 236 (1957)] are explicit in their interpretation of the term "claim" in section 1500. Both reject the argument that "claim" is based on legal theories. Both hold "claim" to be defined by the facts. *British American* specifically applied this interpretation to a case involving tort and contract theories, the same theories raised in the instant appeal. A contrary interpretation would defeat the intent of Congress and would allow a plaintiff to bring duplicative actions on the same operative facts. "The possibility of inconsistent judicial resolution of similar legal issues would then exist and the dual proceedings could result in unfair burden to the defendant, and unnecessary crowding of this court's docket and general administrative chaos." *City of Santa Clara v. United States*, 215 Ct.Cl. 890, 893, 1977 WL 9595 (1977). Accordingly, we construe the term "claim" in 28 U.S.C. § 1500 to be defined by the operative facts alleged, not the legal theories raised.

*Johns–Manville Corp. v. United States*, 855 F.2d at 1562–63 (footnote omitted). In *Johns–Manville*, indemnification claims under the Federal Tort Claims Act were filed in federal district courts, and contract-based claims were filed in the Court of Federal Claims. Although different legal theories were employed, the relief sought in both fora was money, such that, under Section 1500, the Court of Federal Claims was determined to be without jurisdiction. *Id.* at 1557–58, 1567–68. This analytical framework was confirmed by the United States Supreme Court in *Keene Corp. v. United States*, 508 U.S. at 212–14, 113 S.Ct. 2035, and recently reaffirmed by the Federal Circuit in *United States v. County of Cook, Illinois*, 170 F.3d 1084, 1091 (Fed.Cir.1999).

In *Keene Corporation v. United States*, the Supreme Court addressed the manner in which two pending cases should be analyzed when applying Section 1500, as follows:

These precedents demonstrate that under the immediate predecessor of § 1500, the comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested.

*Id.* at 212, 113 S.Ct. 2035 (citations omitted; footnote omitted).

The United States Court of Appeals for the Federal Circuit in *Loveladies Harbor, Inc. v. United States* also discussed whether the same relief must be sought in the two courts in order to trigger Section 1500:

For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief. We know of no case arising from the same operative facts in which § 1500 has been held to bar jurisdiction over a claim praying for relief distinctly different from that sought in a pending proceeding.

*Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed.Cir.1994), *aff'd*, 28 F.3d 1171 (Fed.Cir.1994), *reh'g denied*. The court in *Loveladies* also observed that "[v]iewing claims as related to the nature of the relief sought is unremarkable. And using differing relief as a characteristic for distinguishing claims was especially appropriate here, because the Court of Federal Claims and its predecessors have been courts with limited authority to grant relief." *Id.* at 1550 (footnote omitted). Thus, the identity of claims under Section 1500 is tested by both the identity of operative facts and the identity of relief requested. *Id.* at 1552. *Accord Dico, Inc. v. United States*, 48 F.3d 1199, 1202 (Fed.Cir.1995) ("Our decision in *Loveladies*, however, made it clear that *Casman [v. United States*, 135 Ct.Cl. 647 (1956) ] is still good law and that different relief means different claims, which in turn means that § 1500 does not apply. Accordingly, Dico is correct that if it had sought different relief in its two actions, dismissal of the Court of

Federal Claims suit under § 1500 would have been improper.").

Subsequent United States Court of Appeals for the Federal Circuit cases, interpreting Section 1500, have discussed how to apply the statute. In *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 75 F.3d 648, 653 (Fed.Cir.1996), the Federal Circuit observed that Richmond, Fredericksburg & Potomac R.R. Co. (RF & P) had filed complaints on the same date in the Eastern District of Virginia and in the United States Court of Federal Claims, arising from the same operative facts, and asking both courts for essentially the same relief—a declaration that RF & P had the right to develop its property free of restrictions in an earlier agreement between RF & P and the government. With the United States District Court suit pending at the time the Court of Federal Claims suit was filed, the latter court normally would have been without jurisdiction pursuant to Section 1500. The Federal Circuit continued:

> However, while the decision of the district court, dismissing RF & P's suit for untimeliness, was on appeal in the Fourth Circuit, RF & P filed an amended complaint in the Court of Federal Claims. In the amended complaint, RF & P now sought money damages for breach of contract and a taking under the Fifth Amendment. The trial judge correctly denied the Government's motion to dismiss the amended complaint for lack of jurisdiction under Section 1500. "For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed.Cir. 1994) (in banc). Because the district court suit and the suit in the Court of Federal Claims under the amended complaint did not seek the same relief, 28 U.S.C. § 1500 does not apply. *Dico, Inc. v. United States*, 48 F.3d 1199 (Fed.Cir.1995).

*Id.* Thus, the Federal Circuit determined that declaratory relief sought in the United States District Court and the money damages sought in the United States Court of Federal Claims were for different remedies, and that jurisdiction in the latter court was not denied by Section 1500. *See id.* at 657.

In a United States Court of Appeals for the Federal Circuit case upholding the Section 1500 jurisdictional bar, *Dico, Inc. v. United States*, the plaintiff had filed an action in the United States District Court for the Southern District of Iowa and the United States Court of Federal Claims for reimbursement from the government for past and future clean up costs of contaminated groundwater Dico had incurred pursuant to an environmental clean up order issued by the United States Environmental Protection Agency. *Dico, Inc. v. United States*, 48 F.3d at 1200. Dico relied on statutory reimbursement provisions, and in the alternative, on the Fifth Amendment's Due Process and Takings Clauses. The suit in the Court of Federal Claims, which had been filed subsequent to the filing of the United States District Court suit, asked for the same past and future clean up costs, and relied on the same theories of recovery. The Court of Federal Claims determined that, under these facts, the court was without jurisdiction under Section 1500. Attempting to avoid the Section 1500 bar, Dico argued in the Court of Appeals for the Federal Circuit that it had pursued different relief in the two trial courts—statutory reimbursement in the District Court and money damages for deprivation of property rights in the Court of Federal Claims. *Id.* at 1202. The Federal Circuit held:

> Clearly, Dico's two actions seek the "same or . . . overlapping relief," *Loveladies*, 27 F.3d at 1554. In its CERCLA suit, Dico seeks money from the Government for a portion of its overall remediation costs. In the Court of Federal Claims suit, Dico seeks money from the Government for the same expenses, in exactly the same amount, on Due Process and Takings theories. That the legal theories are different does not mean that the relief is different.

\* \* \* \* \* \*

UNR[4] established that § 1500 is a battle of pleadings. *Loveladies* further established that if the Court of Federal claims complaint pleads facts which demonstrate a different legal injury from that pursued in another court, or seeks different relief, it involves a different claim which § 1500 does not bar. If a plaintiff in fact has two different claims, as defined in *Loveladies*, then it is the responsibility of the plaintiff to allege, clearly and with specificity, that different claims are involved in its two actions. An analysis of this case shows that the same claims were made by Dico in both actions. Dico's two complaints, which obviously copied each other with only minor or irrelevant variations, do not indicate otherwise or identify the distinction that Dico now claims to have intended.

*Id.* at 1203–04 (footnote added).

The plaintiff in the above captioned case contends that the Southern District of Texas, McAllen Division case does not contain a claim for breach of the Highland Hills Station lease, which is the subject of the case before the Court of Federal Claims. The plaintiff characterizes the Highland Hills Station reference in the Southern District of Texas complaint in this manner: "The Highland Hills lease is mentioned in the Plaintiffs' Original Petition only informationally to apprise the court of the overall events that transpired between the parties. Nowhere does the Plaintiff seek relief against the United States Postal Service for the breach of such lease." In fact, the Highland Hills Station is cited twice in the Southern District of Texas, McAllen Division complaint as one of the rental sources used by the USPS to recoup charges imposed by the USPS at the McAllen, Texas and Pennsauken, Pennsylvania Post Offices. Instead of paying the rent due on the Highland Hills Station, the USPS retained the rent money and applied it toward money the USPS contends it is due from the plaintiff at the other two post offices. In one reference in the Southern District of Texas, McAllen Division complaint, the plaintiff stated, "[t]he 18 properties the rent from which is being offset are as follows

...[including Highland Hills in the list enumerated]"; in the other reference, the plaintiff stated, "[t]he 13 leases whose rental payments are to be wrongfully offset are as follows ...[including Highland Hills in the list enumerated]."

To prevail in the action filed in the United States Court of Federal Claims, plaintiff would have to demonstrate entitlement to rent under the Highland Hills lease, prove whether or not the charges levied against plaintiff are legitimate and prove that the offsets to the other two leases (the McAllen and Pennsauken post office leases) were improper. These appear to be overlapping of the matters at issue before the Southern District of Texas, McAllen Division. The operative facts under the terms of the leases in the two suits are substantially the same, and the type of relief requested—monetary—is the same. Section 1500 rejects the notion that a plaintiff may piecemeal its litigation in the fashion contemplated by the plaintiff. Plaintiff may attempt to characterize the references to the Highland Hills Station as merely informational in the Southern District of Texas, McAllen Division action, however, the facts and the law leading to a determination of the USPS' liability including plaintiff's entitlement to the recovery of rental payments at the Highland Hills Station and the alleged wrongfulness of defendant's offset action regarding Highland Hills rentals due are at issue in the Southern District of Texas, McAllen Division litigation as well as in the Court of Federal Claims. Neither complaint is so artfully drafted as to exclude overlapping issues in both courts. To a lesser or greater extent, both courts will have to address each of these issues raised. Litigating overlapping matters in two fora forces the defendant to litigate on two fronts, ignores judicial economy and could serve to divest this court of jurisdiction pursuant to 28 U.S.C. § 1500, if, under the language of the statute, the claims were pending in the Southern District of Texas, McAllen Division, as well in as the Court of Federal Claims. In the above captioned case, however, as is discussed below, whether or not plaintiff's

4. *UNR Indus., Inc. v. United States,* 962 F.2d 1013 (Fed.Cir.1992), *aff'd sub nom. Keene Corp.* *v. United States,* 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993).

claims filed in the United States Court of Federal Claims and in the Southern District of Texas, McAllen Division District Court are distinct as presented in each of the two complaints is not dispositive.

The plaintiff next contends that the case in the Court of Federal Claims was filed prior to the case currently pending in the Southern District of Texas, McAllen Division and cites the United States Court of Claims opinion in *Tecon Engineers* for the proposition that the subsequent filing of the same claim in district court does not divest the Court of Federal Claims of jurisdiction. *Tecon Eng'rs, Inc. v. United States,* 170 Ct.Cl. 389, 399, 343 F.2d 943 (1965), *cert. denied,* 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966). To this end, the plaintiff notes that the action in the Court of Federal Claims was originally filed in State court on February 5, 1998 before it was transferred to the United States Federal District Court for the Western District in San Antonio, which transferred part of the case to this court. Furthermore, the action currently pending in the Southern District of Texas, McAllen Division was originally filed in State court on April 22, 1998, before it was transferred to the McAllen court. The plaintiff, therefore, argues, under *Tecon,* that jurisdiction in the Court of Federal Claims is not divested.

The United States Court of Appeals for the Federal Circuit criticized and rejected *Tecon Engineers* in the decision the Circuit court issued in *UNR Industries, Inc. v. United States,* 962 F.2d at 1023. The Federal Circuit observed:

> In *Tecon,* 170 Ct.Cl. 389, 343 F.2d 943, the Court of Claims again succumbed to revision of section 1500 and held that a complaint filed in district court after a petition is filed in the Court of Claims did not defeat jurisdiction. The court tried to justify this by stating that "[f]or the most part" its earlier precedent involved "situations where suit was filed in another court prior to, or simultaneous with, the filing of the petition in this court." *Id.* at 950 (footnotes omitted). To the contrary, however, as we have seen, in *Hobbs [v. United States,* 168 Ct.Cl. 646 (1964)], the other suit was filed one day after the Court of

Claims petition. In *Maguire Industries[, Inc. v. United States,* 114 Ct.Cl. 687, 86 F.Supp. 905 (1949)], cited as an example of a case in which the filing in the other court was before the Court of Claims petition, the event which ousted the Court of Claims of jurisdiction under section 1500 was the appeal of a Tax Court decision subsequent to the filing of the Court of Claims petition.

> The facts underlying *Tecon* probably explain the court's desire to retain jurisdiction. Taxpayers sued in the Court of Claims for a refund of federal income taxes and civil fraud penalties. After much discovery, several pretrial conferences, and several trial postponements, plaintiffs filed the same claims in a district court and then moved the Court of Claims to dismiss its case under section 1500. An exasperated Court of Claims retained jurisdiction so it could dismiss the case with prejudice for failure to prosecute. We suspect this abuse of process and vexatious litigation would have been appropriately punished by the district court if this breach of jurisdictional jurisprudence had not intervened. We are quite certain that a district court would not hesitate to invoke Federal Rule of Civil Procedure 11 if faced with this kind of conduct today. *See also* 28 U.S.C. § 1927 (1988).

> \*  \*  \*  \*  \*  \*

> Therefore, we hold today that in accordance with the words, meaning, and intent of section 1500: 1) if the same claim is pending in another court at the time the complaint is filed in the Claims Court, the Claims Court has no jurisdiction, regardless of when an objection is raised or acted on; 2) if the same claim is filed in another court *after* the complaint is filed in the Claims Court, the Claims Court is by that action divested of jurisdiction, regardless of when the court memorializes the fact by order of dismissal; and 3) if the same claim has been finally disposed of by another court before the complaint is filed in the Claims Court, ordinary rules of res judicata and available defenses apply.

*UNR Indus. v. United States,* 962 F.2d at 1020, 1021 (emphasis added).

Although the United States Supreme Court affirmed *UNR Industries* on appeal, the Court held that it did not have to overrule *Tecon Engineers* to do so, inasmuch as the Court's decision, "turns on Keene's earlier filed District Court actions, and even Keene now concedes it to be 'unnecessary for the Court to address the *Tecon* question' in ruling on the dismissal of Keene's claims." *Keene Corp. v. United States*, 508 U.S. at 216, 113 S.Ct. 2035. Subsequently, in *Loveladies Harbor, Inc. v. United States*, 27 F.3d at 1549, the Federal Circuit held that, "[a]s the Supreme Court has reminded us, anything we said in *UNR* regarding the legal import of cases whose factual bases were not properly before us was mere dictum, and therefore we will not accord it stare decisis effect." In fact, the dicta on *Tecon* by the Federal Circuit in its *UNR* opinion was not adopted in the Federal Circuit's later opinion in *Hardwick Brothers*, which declared: "we conclude that governing precedent establishes that Hardwick's later-filed district court action did not deprive the Court of Federal Claims of jurisdiction over Hardwick's contract claim.... *Tecon Engineers* remains good law and binding on this court." *Hardwick Bros. Co. II v. United States*, 72 F.3d 883, 884, 886 (Fed.Cir.1995) (citation omitted); *Dico v. United States*, 48 F.3d 1199, 1201 n. 4 (Fed.Cir.1995); *Loveladies Harbor, Inc. v. United States*, 27 F.3d at 1548–49 & n. 10. *See also Teegarden v. United States*, 42 Fed.Cl. 252, 255 (1998).

The latest Federal Circuit pronouncement in this area considered whether claims filed simultaneously in district court and in the Court of Federal Claims divests the latter of jurisdiction. The Federal Circuit considered *Tecon Engineers*, but concluded in that case Section 1500 did render the Court of Federal Claims to be without jurisdiction:

Finding neither the language of the statute nor the legislative history enlightening, we endeavor to further the established policies of § 1500, which are "to force plaintiffs to choose between pursuing their claims in the Court of [Federal] Claims or in another court," *UNR*, 962 F.2d at 1018 (citing the legislative history of the original version of § 1500, 81 Cong. Globe, 40th Cong., 2d Sess. 2769 (1868)), and to "protect the United States from having to defend two lawsuits over the same matter simultaneously," *id.* at 1019; *see also National Cored Forgings*, 132 F.Supp. at 458 ("The obvious and declared purpose of [§ 1500] was to require an election between a suit in this court against the United States and one brought" in the district courts) (citing *Matson Navigation Co. v. United States*, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336 (1931) [(1932)]). These policies are promoted by precluding jurisdiction in the Court of Federal Claims over claims which had been previously filed in the district courts, and nothing suggests that these policies would not similarly be promoted by precluding jurisdiction in the simultaneous filing context. Accordingly, we hold that the "filing" of the same claim simultaneously in the district court and the Court of Federal Claims by operation of § 1631 deprives the latter court of jurisdiction pursuant to § 1500. Accordingly, Counts II and IV were "pending" in the district court for purposes of § 1500 at the time that Counts III and V were simultaneously filed in the Court of Federal Claims.

*United States v. County of Cook, Illinois,* 170 F.3d 1084, 1090–91 (Fed.Cir.1999) (alterations in original). The sum of these cases leads us to conclude that the same action filed in district court prior to being filed in the Court of Federal Claims divests the latter of jurisdiction, as do actions filed simultaneously, but actions filed in district court subsequent to the Court of Federal Claims filing are not considered "pending" in the language of Section 1500, and thus do not divest this court of jurisdiction. Having argued that *Tecon Engineers* still controls, plaintiff also argues that an examination of the initial filing dates of their claims in State court leads to the conclusion that the action removed to the Western District of Texas, San Antonio Division, and then partially transferred to the Court of Federal Claims, preceded the action removed from State court to the Southern District of Texas, McAllen Division. For the purposes of our discussion, however, only the filing dates in the federal courts are relevant. *See* 28 U.S.C. § 1631 and 28 U.S.C. § 610 quoted

below. The filing dates in question are as follows:

| Removed From State To | Partially Transferred To | Status of Federal District Court Case |
|---|---|---|
| Western District of Texas San Antonio Division February 18, 1998 | Court of Federal Claims July 21, 1998 | Remainder of the case dismissed without prejudice, September 24, 1998 |
| Southern District of Texas McAllen Division June 11, 1998 | | Still pending |

---

■ With respect to the above dates, defendant argues that:

The flaw in the analogy to *Tecon Engineers*, however, is that the Federal district court in San Antonio did not properly have jurisdiction over this claim [the claim transferred to the Court of Federal Claims], which is subject to the Contract Disputes Act ("CDA"). Because it did not have jurisdiction over a CDA lease, the court, on May 12, 1998, ordered that the claim be transferred, and Spodek's complaint in this Court was filed on July 21, 1998. Since the Federal district court in San Antonio never obtained or exercised jurisdiction over this claim, and the rule of comity requires equal and concurrent jurisdiction, the date that the action was filed in San Antonio is irrelevant.

Unlike the San Antonio action, the court in the McAllen action has exercised jurisdiction over this claim. It was filed prior to the filing of the complaint in this Court, and, accordingly, pursuant to 28 U.S.C. § 1500, this claim must be dismissed.

Defendant's argument, however, fails to take into account 28 U.S.C. § 1631, which is dispositive on the matter of the selection of operative dates for purposes of Section 1500. Section 1631 provides:

Transfer to cure want of jurisdiction

Whenever a civil action is filed in a court as defined in section 610[5] of this title ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ..., and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.

28 U.S.C. § 1631 (1994) (footnote added). *See also United States v. County of Cook, Illinois,* 170 F.3d at 1089 (holding "that § 1631 allows for the transfer of less than all of the claims in a civil action to the Court of Federal Claims.").

■ In the above captioned case, No. 98–594C, the Western District of Texas, San Antonio Division, determined that it did not have jurisdiction over the plaintiff's claim for past due rent, and, therefore, transferred that portion of the claim to the Court of Federal Claims. Thus, the operative date under Section 1631 is the February 18, 1998 filing in the Western District of Texas, San Antonio Division compared to the later June 11, 1998 filing date in the Southern District of Texas, McAllen Division. Inasmuch as the action in the McAllen Division federal court was filed subsequent to the operative date of

5. 28 U.S.C. § 610 (1994) reads:

As used in this chapter the word "courts" includes the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade.

filing in the Court of Federal Claims, even if the two claims are similarly presented in the Court of Federal Claims and in the District Court for the Southern District of Texas, McAllen Division complaints, Section 1500 does not divest the Court of Federal Claims of jurisdiction.

## CONCLUSION

As required by the statute and interpretative case precedent, any analysis of the applicability of 28 U.S.C. § 1500 must be conducted pursuant to a case by case, fact-based methodology. With respect to Case No. 98–594C brought by J. Leonard Spodek, 28 U.S.C. § 1500 does not divest this court of jurisdiction. The defendant's motion to dismiss Case No. 98–594C is, therefore, **DENIED.** This decision, however, does not dispose of any other similar motions which have or might be brought regarding any of the other cases which plaintiff presently has pending before the United States Court of Federal Claims.

**IT IS SO ORDERED.**