# United States Court of Appeals for the Federal Circuit

2008-5043

TOHONO O'ODHAM NATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Mark I. Levy, Kilpatrick Stockton, LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were, Keith M. Harper, G. William Austin, III, Catherine F. Munson, and Raymond M. Bennett, of Raleigh, North Carolina.

Sambhav N. Sankar, Attorney, Evironmental & Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were Ronald J. Tenpas, Assistant Attorney General, and Aaron P. Avila, Attorney.

Appealed from: United States Court of Federal Claims

Senior Judge Eric G. Bruggink

# United States Court of Appeals for the Federal Circuit

2008-5043

TOHONO O'ODHAM NATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 06-CV-944, Senior Judge Eric G. Bruggink.

_____

DECIDED: March 16, 2009

_____

Before NEWMAN, LINN, and MOORE, Circuit Judges.

Opinion for the court filed by Circuit Judge LINN. Dissenting opinion filed by Circuit Judge MOORE.

LINN, Circuit Judge.

This case concerns the application of 28 U.S.C. § 1500, the statute that divests the United States Court of Federal Claims of jurisdiction over "any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." Applying § 1500, the Court of Federal Claims dismissed an action brought by the Tohono O'odham Nation (the "Nation") alleging that the United States breached certain fiduciary duties as trustee of funds and property owned by the Nation. Tohono O'odham Nation v. United States, 79 Fed. Cl. 645, 646 (2007). Because we conclude that the Nation's complaint in the Court of Federal Claims seeks

relief that is different from the relief sought in its earlier-filed district court action, we reverse.

## I.  BACKGROUND

The Nation is a federally recognized Indian tribe of approximately 26,000 members, located in Arizona.  Tohono O'odham Nation, 79 Fed. Cl. at 646.  Collectively, the Nation's reservations consist of nearly three million acres of land.  Id.  The United States manages the Nation's land and holds income derived from that land in trust, including income from the sale of natural resources and income from leases and other conveyances to third parties.  Id.  Additionally, the United States holds in trust money awarded to the Nation as a result of legal judgments, including $26 million that the United States paid to the Nation to settle a takings and trespass action in 1976.  Id.

On December 28, 2006, the Nation brought an action in the United States District Court for the District of Columbia against the Secretary of the Interior, the Special Trustee for American Indians, and the Secretary of the Treasury, alleging that the United States had breached certain fiduciary duties in connection with its management of the Nation's trust assets.  See Tohono O'odham Nation v. Kempthorne, No. 1:06-CV-02236, Doc. 1, at 1 (D.D.C Dec. 28, 2006) ("District Court Complaint").  Specifically, the Nation presented in two counts "an action to seek redress of breaches of trust by the United States, acting by and through the defendants, in the management and accounting of trust assets, including funds and lands, belonging to the plaintiff . . . and to compel the defendants to provide a full and complete accounting of all trust assets belonging to the Nation and to correct the balances of the Nation's trust fund accounts to reflect accurate balances."  Id. at 1-2.  The Nation's prayer for relief requested nine remedies:

1. For a decree construing the trust obligations of the defendants to the Nation, including, but not limited to, the duty to provide a complete, accurate, and adequate accounting of all trust assets belonging to the Nation and held in trust by the defendants.

2. For a decree that the United States, acting through the defendants, has been in breach of its trust obligations since the inception of this trust and continues to be in breach of those duties today, specifically including, _inter alia_, its fiduciary duty to provide a complete, accurate, and adequate accounting of all trust assets belonging to the Nation and held in trust by the United States.

3. For a decree that the AA Reports do not constitute the complete, accurate, and adequate accounting that the defendants are obligated to provide to the Nation.

4. For a decree delineating the fiduciary duties owed by the defendants to the Nation with respect to the management and administration of the trust assets belonging to the Nation.

5. For a decree directing the defendants (1) to provide a complete, accurate, and adequate accounting of the Nation's trust assets, including, but not limited to, funds under the custody and control of the United States and (2) to comply with all other fiduciary duties as determined by this Court.

6. For a decree providing for the restatement of the Nation's trust fund account balances in conformity with this accounting, as well as any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties).

7. For a decree requiring the defendants to provide to the Nation all material information regarding the management and administration of the trust assets belonging to the Nation and held in trust for its benefit by the defendants.

8. For an award of the Nation's costs of suit, including, without limitation, attorneys' fees under the Equal Access to Justice Act and other statutes as well as general equitable principles, and the fees and costs of expert assistance.

9. For such other and further relief as the Court, as a Chancellor sitting in equity, may deem just and proper.

Id. at 18-19.

On December 29, 2006—one day after it filed its district court complaint—the Nation brought a second action in the Court of Federal Claims. The complaint characterized that second action as "an action for money damages against the United States, brought to redress gross breaches of trust by the United States . . . as trustees and trustee-delegates of land, mineral resources and other assets held by them for the benefit of the Tohono O'odham Nation." Tohono O'odham Nation v. United States, No. 06-CV-944, Doc. 1, at 1, (Ct. Fed. Cl. Dec. 29, 2006) ("Court of Federal Claims Complaint"). In its Court of Federal Claims action, the Nation asserted four counts, entitled "Damages Resulting from the United States' Breach of Fiduciary Duty with Respect to the Management of the Nation's Mineral Estate," "Damages Arising from the United States' Breach of Fiduciary Duty with Respect to the Management of the Nation's Non-Mineral Estate," "Damages Arising from the United States' Breach of Fiduciary Duty with Respect to the Management of Judgment Funds," and "Damages Arising from the United States' Breach of Fiduciary Duty with Respect to Deposit and Investment of Trust Funds." Id. at 9-12. In its prayer for relief, the Nation asked:

1.    For a determination that the Defendant is liable to the Nation in damages for the injuries and losses caused as a result of Defendant's breaches of fiduciary duty;

2.    For a determination of the amount of damages due the Nation plus interest as allowed by law;

3.    That the costs of this action, including reasonable attorneys fees, be awarded to the Nation;

4.    For such other and further relief as the Court deems just and appropriate.

Id. at 13.

The United States moved to dismiss the Nation's action in the Court of Federal Claims for lack of jurisdiction in light of 28 U.S.C. § 1500. Tohono O'odham Nation, 79 Fed. Cl. at 646. The Court of Federal Claims concluded that the Nation's claim "arises from the same operative facts and seeks the same relief as the claim in district court." Id. at 659. As a result, the Court of Federal Claims held that it lacked jurisdiction under § 1500, and it granted the United States' motion to dismiss. Id.

The Nation timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (2006). "We review the Court of Federal Claims's dismissal for lack of jurisdiction de novo." Sacco v. United States, 452 F.3d 1305, 1308 (Fed. Cir. 2006).

## II. DISCUSSION

Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500 (emphasis added).

Following a series of cases in which this court interpreted the meaning of "claim" in § 1500, see, e.g., Johns-Manville Corp. v. United States, 855 F.2d 1556 (Fed. Cir. 1988); UNR Indus., Inc. v. United States, 962 F.2d 1013 (Fed. Cir. 1992) (en banc), the Supreme Court addressed the issue in Keene Corp. v. United States, 508 U.S. 200 (1993), aff'g UNR, 962 F.2d 1013. The Supreme Court remarked that § 1500 "requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit." Keene, 508 U.S. at 210. The Supreme Court also recognized, however, that

§ 1500 does not define the critical term "claim" and that "[t]he exact nature of the things to be compared is not illuminated . . . by the awkward formulation of § 1500." Id.

In Keene, the Supreme Court held that "the comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested." Id. at 212. The Supreme Court expressly left open "whether two actions based on the same operative facts, but seeking completely different relief, would implicate § 1500." Id. at 213 n.6.

The dissent treats the Supreme Court's analysis in Keene as the final word on the matter. See Dissenting Op. at 1, 3-7. However, shortly after Keene, this court, sitting en banc, interpreted and applied the Keene opinion and expressly addressed the question that Keene left open. In Loveladies Harbor, Inc. v. United States, after reviewing this court's earlier tests for the same claim in § 1500 cases in light of the Supreme Court's holding in Keene, we held:

> Taken together, these tests produce a working definition of "claims" for the purpose of applying § 1500. For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from **the same operative facts**, and must seek **the same relief**.

27 F.3d 1545, 1551 (Fed. Cir. 1994) (en banc).

It is the Loveladies court's interpretation of Keene that is binding on this panel. See, e.g., Barclay v. United States, 443 F.3d 1368, 1373 (Fed. Cir. 2006) ("Panels of this court are bound by previous precedential decisions until overturned by the Supreme Court or by this court en banc."); Foster v. Hallco Mfg. Co., 947 F.2d 469, 475 n.5 (Fed. Cir. 1991) (remarking that district court committed legal error by reinterpreting an earlier Supreme Court case, rather than applying this court's subsequent interpretation of that

case); see also Walton v. Bisco Indus., Inc., 119 F.3d 368, 371 n.4 (5th Cir. 1997) ("To the extent that [the appellant] believes that we have construed [an earlier Supreme Court decision] incorrectly, we note that absent an intervening Supreme Court decision or a decision by this court sitting en banc, we are bound by a prior panel's interpretation."); Tucker v. Phyfer, 819 F.2d 1030, 1035 n.7 (11th Cir. 1987) ("[H]ad the [earlier] panel expressly considered [two Supreme Court decisions], we would be bound by its interpretation and application of those decisions."); Diamond Shamrock Co. v. N.L.R.B., 443 F.2d 52, 60 n.27 (3d Cir. 1971) (holding that court is bound by prior panel's interpretation of Supreme Court decision); cf. United States v. Rapanos, 376 F.3d 629, 642 (6th Cir. 2004), vacated on other grounds, 547 U.S. 715 (2006) (rejecting appellee's argument concerning interpretation of a Supreme Court decision because it had "previously been adjudicated by this court, in a published disposition, and its conclusion is entitled to stare decisis"). The dissent errs by interpreting and applying Keene de novo and ignoring the interpretation of Keene set forth in Loveladies.

Under the test set forth in Loveladies, § 1500 is applicable only if two claims "arise from the same operative facts" and "seek the same relief." Loveladies, 27 F.3d at 1551. Conversely, if an action in the Court of Federal Claims either arises from different operative facts or seeks completely different relief than the earlier-filed action, then § 1500 does not divest the Court of Federal Claims of jurisdiction. In this case, the "same relief" prong is dispositive.[1]

---

[1] Because we conclude that the "same relief" prong of the Loveladies test is not met, we do not address whether the Nation's complaints arise from the same operative facts.

2008-5043      7

Drawing on the "distinctly different" language in Loveladies, the United States argues for a sweeping rule that "it is the form of the relief that matters—here, money." Br. of Def.-Appellee United States at 43; see also id. at 43 n.10 (arguing for "[a] rule that it is the form of relief sought in the two courts that matters for purposes of Section 1500"). In the United States' view, the "same relief" prong is always satisfied whenever two complaints both seek any relief in the form of money—irrespective of any differences in the amounts requested, the basis for the calculation of those amounts, the alleged injuries giving rise to those amounts, or the court's authority for awarding the requested money (i.e., as damages, as an equitable remedy, or under some other authority).

We disagree that the "distinctly different" language in Loveladies compels such a sweeping rule. To the contrary, Loveladies refers interchangeably to "distinctly different" relief and simply "different" relief. See, e.g., Loveladies, 27 F.3d at 1549 ("distinctly different relief"); id. at 1550 ("different form of relief"); id. at 1551 ("relief distinctly different"); id. at 1552 ("distinctly different relief"); id. at 1552-53 ("different relief"); id. at 1553 ("relief different"). We see no meaningful difference—distinct or otherwise—between "different" and "distinctly different." Either the relief requested in two complaints is the same, or it is different. An award of back wages for a particular time period under the Equal Pay Act is the same as—not "different" or "distinctly different" from—an award of back wages for that same time period under Title VII. See Harbuck v. United States, 378 F.3d 1324, 1329 (Fed. Cir. 2004). By contrast, injunctive relief is "different"—or "distinctly different"—from money damages. See, e.g., Johns-Manville, 855 F.2d at 1566. There is no requirement of any heightened showing of

"difference." Rather, we must determine simply whether the relief that the Nation requested in its Court of Federal Claims complaint is the same as the relief that it requested in its district court complaint.

To answer that question, we look to each complaint's prayer for relief. See Loveladies, 27 F.3d at 1553 (focusing on prayers for relief). In its district court complaint, the Nation requested relief that falls into seven categories:

(i) a declaration that the United States has certain specific trust obligations (requests 1 and 4);

(ii) a declaration that the United States is in breach of those obligations (requests 2 and 3);

(iii) an accounting (requests 5(1) and 7);

(iv) an order directing the United States to comply with its other trust obligations going forward (request 5(2));

(v) restatement of trust account balances in conformity with the accounting "as well as any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties)" (request 6);

(vi) costs and attorneys' fees (request 8); and

(vii) "other and further relief as the Court, as a Chancellor sitting in equity, may deem just and proper" (request 9).

District Court Complaint, at 18-19. In essence, the Nation requested that the district court declare that the United States was in breach of its duties as a trustee and order specific performance of those duties. Notably, all of the requested relief is equitable relief, not damages. See Johns-Manville, 855 F.2d at 1566 (distinguishing "money" damages and "equitable" relief as "different type[s] of relief" for purposes of § 1500); Loveladies, 27 F.3d at 1550 (same). The Nation, in fact, was careful to limit its request

for "other and further relief" in the district court to relief "as the Court, as a Chancellor sitting in equity, may deem just and proper." District Court Complaint, at 19.

By contrast, the Nation's complaint in the Court of Federal Claims seeks damages at law, not equitable relief. In its prayer for relief in the Court of Federal Claims, the Nation requested only damages (requests 1 and 2), attorneys' fees and costs (request 3), and "such other and further relief as the Court deems just and appropriate" (request 4). Court of Federal Claims Complaint, at 13. Moreover, the word "Damages" appears in the title of all four of the Nation's counts. Id. at 9-12. Nowhere in its prayer for relief in the Court of Federal Claims does the Nation seek specific performance, an injunction, or any other type of equitable relief.

The Nation's careful separation of equitable relief and money damages is critical to the § 1500 analysis in this case, just as it was in Loveladies. In concluding that the two complaints at issue requested different relief, the court in Loveladies reasoned that "[i]t is important to note that the prayer in the Court of Claims complaint contained an express request for damages. Significantly, that request was missing from the complaint in the district court." Loveladies, 27 F.3d at 1553. Likewise, in this case, the Nation's complaint in the district court requests only equitable relief and not damages, while the Nation's complaint in the Court of Federal Claims requests only damages and not equitable relief.

The Court of Federal Claims identified two areas of "what looks like overlapping relief (money and an accounting in both courts)." Tohono O'odham Nation, 79 Fed. Cl. at 656. As for "money," the court reasoned that the Nation's "district court complaint specifically seeks money (disgorgement, restatement of accounts, and restitution)," and

that this request overlaps with its request for money damages in the Court of Federal Claims. Id. at 652. As far as an accounting, the court concluded that an accounting in aid of judgment in the Court of Federal Claims would overlap with the request for an accounting in the district court.

We disagree. The Nation's district court complaint requests an accounting and a "restatement of the Nation's trust fund account balances in conformity with this accounting, as well as any additional equitable relief that may be appropriate" including disgorgement or equitable restitution. District Court Complaint, at 18. In other words, the Nation is requesting that, following the accounting, its account balances be adjusted to reflect the correct amounts to correct any errors discovered in the accounting. The Nation refers to this as a request for "old money"—namely, money that is already in the government's possession, but that erroneously does not appear in the Nation's accounts. In the course of making an adjustment of account balances, it may be necessary for the court to order other "equitable relief that may be appropriate," including disgorgement or equitable restitution, if it is discovered that the United States has misappropriated funds from the Nation's trust and/or improperly profited from the Nation's "old money."

This equitable relief as "appropriate" in connection with the accounting is not the same as the "damages for the injuries and losses" that the Nation has requested in the Court of Federal Claims. Court of Federal Claims Complaint, at 13. Notably, each of the "injuries" that the Nation alleges in the Court of Federal Claims is an injury resulting from the United States' failure to properly manage the Nation's assets to obtain the maximum value. See id. at 9 (count 1 alleging mismanagement of mineral estate); id. at

10 (count 2 alleging mismanagement of non-mineral estate); id. at 11 (count 3 alleging mismanagement of judgment funds); id. at 12 (count 4 alleging mismanagement in deposit and investment of funds). The "injuries and losses" for which the Nation seeks relief are essentially consequential damages—profits that the Nation would have made but for the United States' mismanagement. The Nation refers to these profits as "new money." Thus, the Court of Federal Claims complaint seeks damages in the form of "new money" that the Nation should have earned as profit but did not, while the district court complaint seeks return of "old money" that belongs to the Nation but erroneously does not appear on its balance sheet. These are not the same types of relief.

The dissent acknowledges that it would be possible to craft two complaints to avoid § 1500 by requesting "old money" in one, and "new money" in the other. Dissenting Op. at 5. However, the dissent concludes that the Nation's complaint in the Court of Federal Claims is not limited to "new money." Id.. Specifically, the dissent reasons that the Court of Federal Claims complaint "alleges fiduciary breaches related to 'old money'" and then "broadly asks for money for breaches of the fiduciary duty." Id. at 5-6. But the Nation's Court of Federal Claims complaint does not "broadly ask[] for money" as the dissent suggests. To the contrary, the Court of Federal Claims complaint expressly asks for damages alone—not any other form of monetary relief, and not equitable relief of any type. See, e.g., Court of Federal Claims Complaint at 1 (entitled "COMPLAINT FOR DAMAGES FOR BREACH OF TRUST OBLIGATIONS"); id. ("This is an action for money damages . . . ." (emphasis added)); id. ("[The] Nation seeks damages for Defendant's mismanagement of the Nation's trust property." (emphasis added)). Nowhere in the Court of Federal Claims complaint does the Nation make any

broad request for "money for breaches of fiduciary duty." Moreover, the very language that the dissent quotes from the Nation's prayer for relief makes clear that the Nation is requesting only consequential damages—i.e., "new money"—not restitution, disgorgement, or other equitable "old money" relief in the Court of Federal Claims: "For a determination that the Defendant is liable to the Nation <u>in damages</u> for the injuries and losses caused <u>as a result</u> of Defendant's breaches of fiduciary duty." <u>Court of Federal Claims Complaint</u> at 13 (emphases added). We therefore disagree with the dissent that the Nation made any request for "old money" in the Court of Federal Claims.

As to the second area of "what looks like overlapping relief" identified by the Court of Federal Claims, the Nation did not—as the Court of Federal Claims suggests— "ask[] for . . . an accounting in both courts." <u>Tohono O'odham Nation</u>, 79 Fed. Cl. at 656. As the Court of Federal Claims pointed out, it is the relief that the plaintiff <u>requests</u> that is relevant under § 1500. <u>Id.</u> at 654 (citing <u>Keene</u>, 508 U.S. at 212; <u>Frantz Equip. Co. v. United States</u>, 98 F. Supp. 579, 580 (Ct. Cl. 1951)). The Nation's prayer for relief in the Court of Federal Claims does not request an accounting. The fact that, "assuming this action were to proceed in [the Court of Federal Claims], and plaintiff satisfied its burdens of proof, what would ensue would amount to an accounting, albeit in aid of judgment," <u>id.</u> at 653, does not transform the Nation's unambiguous request for damages into a request for an accounting.

Finally, we address the United States' argument that permitting the Nation's claims to go forward in the Court of Federal Claims would undermine the policy and purpose of § 1500. The United States argues that "the policy and purpose underlying Section 1500 is that the United States not be required to defend the same claims at the

same time in two different courts; that is exactly what the Nation seeks to do here." Br. of Defendant-Appellee United States at 11-12; see also Tohono O'ohdam, 79 Fed. Cl. at 654 (noting that the "purpose of section 1500 was to force plaintiffs to elect between the Court of Claims and another court in which to pursue its whole claim against the government" (citing Casman v. United States, 135 Ct. Cl. 647, 654 (1956))). The dissent similarly argues that § 1500 allows the government to avoid duplicative litigation. Dissenting Op. at 1 n.1.

In practice, § 1500 does not actually prevent a plaintiff from filing two actions seeking the same relief for the same claims. It merely requires that the plaintiff file its action in the Court of Federal Claims before it files its district court complaint. This anomalous rule is the result of a series of decisions by this court, our predecessor court, and the Supreme Court. In Tecon Engineers, Inc. v. United States, our predecessor court held that "the only reasonable interpretation of [§ 1500] is that it serves to deprive [the Court of Federal Claims] of jurisdiction of any claim for or in respect to which plaintiff has pending in any other court any suit against the United States, only when the suit shall have been commenced in the other court before the claim was filed in [the Court of Federal Claims]." 343 F.2d 943, 949 (Ct. Cl. 1965). Later, this court, sitting en banc, overruled Tecon. UNR, 962 F.2d at 1022-23. The Supreme Court granted certiorari in UNR (then re-named Keene), and held that it was "unnecessary to consider, much less repudiate, the 'judicially created exceptions' to § 1500 found in Tecon Engineers" and other cases. Keene, 508 U.S. at 216. We have since recognized that Tecon is still good law, because the aspect of UNR that had overruled it was undone by the Supreme Court. See, e.g., Hardwick Bros. Co. II v. United States, 72 F.3d 883, 886

(1995) ("[T]he Supreme Court expressly declined to overturn <u>Tecon Engineers</u>, and this court in <u>Loveladies I</u> acknowledged the continuing vitality of <u>Tecon</u> as an established precedent."); <u>id.</u> ("After <u>UNR/Keene</u> and <u>Loveladies I</u>, <u>Tecon Engineers</u> remains good law and binding on this court."). Therefore, in this case, had the Nation simply filed its complaints in reverse order, § 1500 would never have even come into play.

The Supreme Court has discussed at length the post-Civil War origins of § 1500. <u>See, e.g.</u>, <u>Keene</u>, 508 U.S. at 206 (remarking that the lineage of § 1500 "runs back more than a century" and that its original purpose was to preclude duplicative actions seeking compensation for seized cotton by parties who had given aid to Confederate soldiers). However, neither the Supreme Court nor this court has found any purpose that § 1500 serves today. Because a party can simply file its Court of Federal Claims action first and avoid § 1500 entirely, it functions as nothing more than a "jurisdictional dance." <u>Loveladies</u>, 27 F.3d at 1549. Thus, the government's and the dissent's argument about the policy and purpose of the statute rings hollow and, moreover, is of no real consequence in this appeal. As we explained in <u>Loveladies</u>:

> Litigation can serve public interests as well as the particular interests of the parties. The nation is served by private litigation which accomplishes public ends, for example, by checking the power of the Government through suits brought under the APA or under the takings clause of the Fifth Amendment. Because this nation relies in significant degree on litigation to control the excesses to which Government may from time to time be prone, it would not be sound policy to force plaintiffs to forego monetary claims in order to challenge the validity of Government action, or to preclude challenges to the validity of Government action in order to protect a Constitutional claim for compensation. Section 1500 was enacted to preclude duplicate cotton claims—claims for money damages—at a time when <u>res judicata</u> principles did not provide the Government with protection against such "duplicative lawsuits." Whatever viability remains in § 1500, absent a clear expression of Congressional intent we ought not extend the statute to allow the Government to

foreclose non-duplicative suits, and to deny remedies the Constitution and statutes otherwise provide.

Id. at 1555-56 (citations omitted).

Although our decision in this case will require the government to litigate in multiple fora, we note that there is no risk of double recovery. The Nation's complaint in the Court of Federal Claims seeks only "new money" damages—relief that the Nation has not requested in district court, and which the district court is, in any event, powerless to award. See 5 U.S.C. § 702 (excluding district court actions seeking "money damages" from waiver of sovereign immunity). Conversely, the Nation's complaint in district court seeks only separate equitable relief, which the Court of Federal Claims is powerless to award. See, e.g., Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716 (Fed. Cir. 1998) ("Although the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court." (citations omitted)). Our decision therefore will not permit the Nation to obtain double recovery.

Because the relief requested in the Nation's district court complaint is different from the relief requested in its Court of Federal Claims complaint, § 1500 does not divest the Court of Federal Claims of jurisdiction. The Court of Federal Claims therefore erred by dismissing the Nation's action for lack of subject matter jurisdiction.

III. CONCLUSION

For the foregoing reasons, the Court of Federal Claims's order dismissing the Nation's complaint is reversed. We remand for proceedings consistent with this opinion.

# United States Court of Appeals for the Federal Circuit

2008-5043

TOHONO O'ODHAM NATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 06-CV-944, Senior Judge Eric G. Bruggink.

MOORE, Circuit Judge, dissenting.

In Keene v. United States, the Supreme Court held that § 1500 deprives the Court of Federal Claims of jurisdiction when "plaintiff's other suit was based on substantially the same operative facts . . . at least if there was some overlap in the relief requested. . . . Congress did not intend the statute to be rendered useless by a narrow concept of identity." 508 U.S. 200, 212-13 (1993) (emphasis added).[1] Because I conclude that the Tohono O'Odham Nation's (Nation) suits were based on substantially

---

[1] Because monetary suits in excess of $10,000 must be filed in the Court of Federal Claims, Gonzales & Gonzales Bonds & Insurance Agency, Inc. v. Department of Homeland Security, 490 F.3d 940, 943 (Fed. Cir. 2007), but absent special exceptions not applicable here, equitable relief must be obtained from the federal district courts, id., many plaintiffs are required to file two separate suits to obtain all the relief to which they are entitled. Plaintiffs must file their separate complaints with precision to avoid seeking overlapping relief and thereby implicating § 1500. Under principles of sovereign immunity, the government can dictate the permissible circumstances of suits against it. Section 1500 prevents multiple simultaneous litigations against the government. The fact that the statute's scope was reduced by Tecon Engineers, Inc. v. United States, 343 F.2d 943, 949 (Ct. Cl. 1965), does not mean that it no longer serves a purpose. Moreover, it is not necessary for a court to justify a particular statute's purpose in order to give effect to that statute.

the same operative facts and that the two complaints included some overlap in the relief requested, I respectfully dissent.

I.

The two complaints were based on substantially the same operative facts. The Nation acknowledges that "[i]n each case it is the trust relationship between the United States as trustee and the Nation as beneficiary that underlies the Nation's claims" and that "the Nation's claims involve the same plaintiff, the same defendant, and perhaps even some of the same property." Further, as the Court of Federal Claims illustrated in great detail, the complaints' recitations of the facts are nearly identical. The Nation argues that because the district court action is based on the duty of accounting and the Court of Federal Claims action is based on the duty of good management, the facts necessary to win its case on each cause of action are different.

The legal theories underlying the claims at issue are irrelevant in a § 1500 analysis. Johns-Manville Corp. v. United States, 855 F.2d 1556, 1564 (Fed. Cir. 1988) ("Since the legal theory is not relevant, neither are the elements of proof necessary to present a prima facie case under that theory."). Although we have not set forth a full and complete definition for the term "operative facts,"[2] it is clear that the operative facts

---

[2]    As we commented in Loveladies Harbor, Inc. v. United States 27 F.3d 1545, 1551, n.17 (Fed. Cir. 1994) (en banc):

> Despite its lineage, it can be argued that there is a basic epistemological difficulty with the notion of legally operative facts independent of a legal theory. Insofar as a fact is "operative"—i.e., relevant to a judicially imposed remedy—it is necessarily associated with an underlying legal theory, that is, the cause of action. For example, without legal underpinning, words in a contract are no different from casual correspondence. Because it is unnecessary for our decision in this case, we need not further refine the meaning of "operative facts."

are not the "elements of proof necessary" to prove the theory.  See Harbuck v. United States, 378 F.3d 1324 (Fed. Cir. 2004).  In Harbuck, the district court complaint alleged sex discrimination in the plaintiff's employment with the Air Force and the Court of Federal Claims complaint alleged a violation of the Equal Pay Act.  We held that the operative facts were the same in both complaints and characterized them as follows: "the Air Force's alleged sexual discrimination by payment of lesser compensation to women than to men for the same or substantially equal work."  Id. at 1328.  To be sure, different facts are needed to prove a claim under Title VII (failing to promote) and a claim under the Equal Pay Act (paying less).  Nevertheless, we held that "[t]he difference between the two theories upon which she relies are but different manifestations of the same underlying claim that the Air Force discriminated against women by paying them less than men."  Id. at 1329.  Similarly, although the Nation puts forth two different legal theories, the operative facts underlying these theories are "substantially the same."  Keene, 508 U.S. at 212.  The majority does not hold otherwise.

II.

The two complaints included "some overlap in the relief requested."[3] Keene, 508 U.S. at 212. In both courts, the Nation is asking for monetary compensation for the government's alleged failures to fulfill its duties.[4] The Nation admits this, but argues that it is seeking different money in each court: "old money" from the district court and "new money" from the Court of Federal Claims. The "old money," the Nation argues, would effect a "restatement of the Nation's trust fund account balances in conformity with [the] accounting." Appellant Br. at 50. The "old money" is therefore the result of a breach in fiduciary duty related to the actual transactions that took place—errors that would be revealed by an accounting. The "new money," in contrast, is "to compensate it for the pecuniary losses it suffered as a result of the government's imprudent management and investment actions." Appellant Reply Br. at 21; Appellant Br. at 51-52

---

[3] I do not understand the majority's assertion that Loveladies is an "interpretation" of the standard set forth in Keene. Keene held that § 1500 deprives the Court of Federal Claims of jurisdiction when "plaintiff's other suit was based on substantially the same operative facts . . . at least if there was some overlap in the relief requested." 508 U.S. at 212. Loveladies held that "the claims in the two courts are for distinctly different and not the same or even overlapping relief—this case presents the straightforward issue of plaintiffs who seek distinctly different types of relief in the two courts." 27 F.3d at 1554. Ultimately, the majority and I both analyze the complaints to see if there is some overlap in the relief requested, and it is on this point that we disagree.

[4] The government also argues that the Nation's request for damages in the Court of Federal Claims would require an accounting in aid of judgment. According to the government, this accounting would overlap with the general accounting that the Nation requested in the district court. Because I believe that the Nation has requested overlapping monetary relief in the two complaints, I do not express an opinion on whether it requested overlapping equitable relief. Because the majority held that there is no overlapping relief at all between the two complaints, it must have concluded that for the purposes of § 1500, an accounting in aid of judgment for monetary damages arising from a duty to manage funds does not overlap with a general equitable accounting arising from a duty to provide an adequate accounting.

(explaining that the Nation seeks "pecuniary losses suffered as a result of the government's failure prudently to manage and invest trust assets").

It seems plausible that carefully drafted complaints could distinguish particular pots of money as different relief, but these complaints nowhere discuss this concept. For purposes of § 1500, we look at the relief requested in the complaint. Keene, 508 U.S. at 212; Dico v. United States, 48 F.3d 1199, 1203 (Fed. Cir. 1995). In Dico, the plaintiff attempted to overcome the plain language of its two complaints and distinguish a takings claim and a due process claim by arguing that they related to different property interests. We disagreed, holding that it was "too late for Dico to attempt at this stage to recast . . . the relief sought by" the two counts. Id. Rather, "the plain language" of the complaint controls the outcome. Id. Here, the plain language of the complaints repudiates the Nation's argument.

The complaint in the Court of Federal Claims is not limited to "new money" as the Nation argues now. The complaint clearly alleges fiduciary breaches related to "old money:"

- Count 1 states: "The United States, as trustee, has never provided the Nation a complete and accurate accounting of the revenue the United States collected or was required to collect under mineral leases and permits. Nor has it provided the Nation complete records of such leases and permits it is required to maintain as trustee."

- Count 2 states: "The United States, as trustee, has never provided the Nation a complete and accurate accounting of the revenue the United States collected or was required to collect, in granting easements and rights of way and leasing tribal properties. Nor has it provided the Nation complete records of such transactions which it is required to maintain as trustee."

- Count 3 states: "At no time has the United States provided the Nation a complete and accurate accounting of judgment funds held in trust for its benefit."

In the prayer for relief in the Court of Federal Claims complaint, the Nation asks for monetary damages in this way: "For a determination that the Defendant is liable to the Nation in damages for injuries and losses caused as a result of Defendant's breaches of fiduciary duty." Court of Federal Claims Complaint, Prayer for Relief ¶ 1. Given that the counts clearly allege breaches of fiduciary duty related to the "old money" and the prayer for relief broadly asks for money for breaches of the fiduciary duty, the Nation has clearly asked for "old money" and therefore overlapping relief.

Contrary to the view of the majority, the Nation's requests for restitution and disgorgement (money) in the district court overlap with its request for "damages for injuries and losses caused as a result of Defendant's breaches of fiduciary duty" (money) in the Court of Federal Claims. While it may be true that money damages is a different technical legal theory than equitable restitution or disgorgement, nonetheless the claim for money damages can access the same pot of "old money" that the equitable claims in the district court can access. The Nation can ask for restitution for the errors revealed in an accounting and damages for errors revealed in an accounting. While these remedies have different legal names, they are both the same "old money." Simply by invoking the word "damages," the Nation cannot disclaim its allegations that the government violated its accounting duties. See Dico, 48 F3d at 1203 ("That the legal theories are different does not mean that the relief is different."); Johns-Manville, 855 F.2d at 1566 ("In the present case, however, the relief sought from both courts is money, but under different theories."). Rather, it is clear that the Nation requests money damages to make it whole for harms that it suffered, and a loss of "old money" for breach of accounting duties is one of the harms it repeatedly alleges in the Court of

Federal Claims complaint. I am bound by § 1500 and where, as here, overlapping relief is sought, the action in the Court of Federal Claims must be dismissed.[5]

The Nation further reasons that because of the jurisdictional limitations of the two courts, we must construe the complaints so that they do not ask for relief that is jurisdictionally precluded. The Nation asks us to cure its pleading defect by construing the complaints consistent with the court's jurisdiction which would then avoid overlapping relief. We should decline to do so.[6] Rather, we must again focus on the relief requested, and here, the complaints give no indication whatsoever that the claims are jurisdictionally bounded.

It is the Nation's responsibility, not ours, to draft two complaints requesting relief with no overlap. See Dico, 48 F.3d at 1204 ("[I]t is the responsibility of the plaintiff to

---

[5]    The Nation argues that the district court complaint seeks only "old money" for breach of accounting duties. While the district court complaint does ask for an equitable accounting and alleges breaches of fiduciary duties related to the "old money," it also alleges breaches which are related only to "new money." See, e.g, District Court Complaint at ¶ 20(f) ("failure to use reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property"). The government, however, does not have to establish complete overlap in the relief sought in the two actions. Since the complaint in the Court of Federal Claims asks for money for failure to properly keep account of the revenue and collections ("old money") and failure to properly manage and invest ("new money"), there is overlap. We need not reach the issue therefore of whether the district court complaint likewise seeks both.

[6]    As an initial matter, the jurisdiction of the district court is irrelevant:

The applicability of Sec. 1500 to the first claim of plaintiff, asserted in its petition herein, is not conditioned upon the question of whether the District Court had jurisdiction of the claim asserted by the plaintiff therein; and it is not necessary to the decision, upon the defendant's plea to the jurisdiction of this court, for us to discuss the question of whether or not the District Court does or does not have jurisdiction of the counterclaim filed by plaintiff therein.

Frantz Equip. Co. v. United States, 98 F. Supp. 579, 580 (Ct. Cl. 1951).

allege, clearly and with specificity, that different claims are involved in its two actions."). If we are obligated in every case to parse the complaints based not on what the parties requested, but rather what jurisdiction entitled them to, then § 1500 would never apply. Had the Nation articulated its requests in its complaints with the subtlety that it has done on appeal, this might have been a different case. As it stands, I am compelled to conclude that the Nation's suits were based on substantially the same operative facts and that the two complaints included some overlap in the relief requested. Therefore, I respectfully dissent.