**ST. BERNARD PARISH GOVERNMENT and Other Owners of Real Property in St. Bernard Parish or the Lower Ninth Ward of the City of New Orleans,[1] Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**No. 05–1119L.**

United States Court of Federal Claims.

July 29, 2011.

---

**1.** This case was filed on October 17, 2005 under the caption *Tommaseo et al. v. United States*, No. 05–1119L. On March 19, 2009, with the consent of the parties, this case was re-captioned: *St.* *Bernard Parish Government and Other Owners of Real Property in St. Bernard Parish or the Lower Ninth Ward of the City of New Orleans v. United States*, No. 05–1119L.

F. Gerald Maples, Carlos A. Zelaya, F. Gerald Maples, P.A., New Orleans, Louisiana, Counsel for Plaintiffs.

Charles J. Cooper, Vincent J. Colatriano, Cooper & Kirk, PLLC, Washington, D.C., Of Counsel for Plaintiffs.

Fred R. Disheroon, James D. Gette, Mark S. Barron, United States Department of Justice, Environment and Natural Resources Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND ORDER

BRADEN, Judge.

### I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY.[2]

#### A. Before The United States District Court For The Eastern District Of Louisiana.

After Hurricane Katrina, several hundred civil actions regarding the inundation by water of the Greater New Orleans area were filed in the United States District Court for the Eastern District of Louisiana (the "District Court"). On July 19, 2006, many of these cases were consolidated for case management purposes, and were re-captioned *In Re Katrina Canal Breaches Consolidated Litigation,* No. 05–4182 (the "District Court Action"). Thereafter, the District Court organized the individual cases into six categories: (1) Levee; (2) Mississippi River–Gulf Outlet;[3] (3) Insurance; (4) Responder; (5) Dredging Limitations; and (6) St. Rita's Nursing Home.

On March 1, 2007, the District Court entered a Case Management Order regarding the Levee, MR–GO, and Insurance categories that required the District Court Plaintiffs to file three separate Master Consolidated Class Action Complaints, one for each claim category, by March 15, 2007. The District Court also required that the District Court Plaintiffs file a separate Motion For Class Certification for each category by March 30, 2007. In addition, the District Court determined that one of the individual actions, *Robinson v. United States,* No. 06–CV–2268 (E.D.La. filed Apr. 25, 2006), would be selected as a test case for resolving common liability issues for all three claim categories.

On March 15, 2007, the District Court Plaintiffs filed a MR–GO Master Consolidated Class Action Complaint, alleging that the United States and other defendants are responsible for flooding damage caused by the MR–GO in the following areas of the City of New Orleans: the Upper and Lower Ninth Ward, New Orleans East, and St. Bernard Parish. On that same date, the District Court set the date for trial in the *Robinson* case to commence on September 8, 2008. On March 30, 2007, the District Court Plaintiffs filed a Motion For Class Certification for the

---

**2.** The relevant facts have been discussed in three prior opinions: *Tommaseo v. United States,* 75 Fed.Cl. 799, 800–01 (2007) (*"Tommaseo I"*); *Tommaseo v. United States,* 80 Fed.Cl. 366, 367–68 (2008) (*"Tommaseo II"*); *St. Bernard Parish v. United States,* 88 Fed.Cl. 528, 531–42 (2009).

**3.** The Mississippi River–Gulf Outlet ("MR–GO") is a 76–mile long navigational channel, constructed by the United States Army Corps of Engineers ("Corps of Engineers") from 1958 to 1968, that connects the Gulf of Mexico and the Port of New Orleans. *See Tommaseo I,* 75 Fed. Cl. at 800; *see also* HISTORY OF MR–GO, http://www.mrgo.gov/MRGO_History.aspx (last visited July 25, 2011).

MR–GO claim category. On February 28, 2008, the District Court Plaintiffs filed an Amended MR–GO Master Consolidated Class Action Complaint.

On October 9, 2008, the District Court rescheduled the *Robinson* trial. On April 20, 2009, the *Robinson* trial commenced. On that same date, the Government petitioned the United States Court of Appeals for the Fifth Circuit for a writ of mandamus to compel the District Court to rule on the pending March 30, 2007 Motion For Class Certification before proceeding with the *Robinson* trial. On June 3, 2009, the United States Court of Appeals for the Fifth Circuit denied the Government's Petition For Writ Of Mandamus.

On November 18, 2009, the District Court issued an opinion in *Robinson*, assigning liability to the Government for the negligent operation and maintenance of the MR–GO and awarding damages to most of the District Court Plaintiffs. *See In Re Katrina Canal Breaches Consol. Litig.*, 647 F.Supp.2d 644 (E.D.La.2009). That decision is presently on appeal before the United States Court of Appeals for the Fifth Circuit. *See In Re Katrina Canal Breaches*, No. 10–30249 (5th Cir. filed Mar. 22, 2010). Briefing is ongoing and the United States Court of Appeals for the Fifth Circuit has not set a date for oral argument.

## B. Before The United States Court Of Federal Claims.

On October 17, 2005, Rocco Tommaseo, Thomas Tommaseo, Steven Bordelon, Cynthia Bordelon, Rocky and Carlo, Inc., and Steve's Mobile Home & R.V. Repair, Inc. (collectively, the "COFC Plaintiffs") filed a Class Action Complaint in the United States Court of Federal Claims (the "COFC Action").

On January 13, 2006, the COFC Plaintiffs filed a First Amended Complaint, alleging that the Corps of Engineers' construction, continued operation (expansion), maintenance, and dredging of the MR–GO caused flooding on their properties in 2005, and in-termittent water damage thereafter, for which the Fifth Amendment to the United States Constitution requires the payment of just compensation. *See Tommaseo I*, 75 Fed.Cl. at 800.

On January 31, 2008, the court issued a Memorandum Opinion And Order granting Plaintiff's Motion For Leave To File A Second Amended Class Action Complaint. *See Tommaseo II*, 80 Fed.Cl. at 376. On that same date, the COFC Plaintiffs filed a Second Amended Complaint, adding twelve new plaintiffs [4] and detailing the property interests of all the COFC Plaintiffs, together with Exhibits.

On August 3, 2009, the court issued a Memorandum Opinion And Order that, among other rulings, stayed this case pending adjudication of the asserted claims under the Federal Torts Claims Act, 28 U.S.C. §§ 2671–80, in *Robinson v. United States. See St. Bernard Parish*, 88 Fed.Cl. at 558–59.

On December 10, 2009, in light of the District Court's November 18, 2009 decision in *Robinson*, the court lifted the stay in this case.

On June 22, 2010, the COFC Plaintiffs filed a Motion To Certify A Class. On July 2, 2010, the Government filed an Unopposed Motion To Stay Briefing on the June 22, 2010 Motion To Certify A Class. On July 6, 2010, the court granted the Government's Motion. On July 12, 2010, the Government requested additional time to complete discovery, which the court granted. On November 1, 2010, the court entered a Scheduling Order, agreed to by all parties, that discovery would conclude by February 7, 2011.

On February 25, 2011, the court convened a conference with the parties. Thereafter, on March 1, 2011, the court entered a Scheduling Order, agreed to by all parties, that established a briefing schedule for Cross Motions For Summary Judgment, scheduled oral argument for September 12, 2011, and set a trial date for November 14, 2011 in New Orleans. On March 14, 2011, the trial was rescheduled for December 12–16, 2011.

---

**4.** The new COFC Plaintiffs were: the St. Bernard Parish Government, Edward Robin, Brad Robin, Edward "Pete" Robin, Jr., Gwendolyn Adams, Henry Adams, Robin Ycloskey Development Nos. 1–4, LLC, Robin Seafood Company, and Port Ship Service, Inc.

On May 23, 2011, the Government filed a Motion To Stay All Proceedings in the COFC Action, until the District Court ruled on the pending March 30, 2007 Motion For Class Certification in the District Court Action ("Gov't Mot."). On June 2, 2011, the COFC Plaintiffs filed a Response In Opposition ("Pl. Resp."). On June 8, 2011, the court convened a hearing on the Government's May 23, 2011 Motion To Stay. On June 15, 2011, the COFC Plaintiffs filed a Supplemental Brief ("Pl. Supp. Br."). On that same date, the Government filed a Reply ("Gov't Reply").

## II. DISCUSSION.

### A. The Parties' Arguments.

#### 1. The Government's Motion To Stay Proceedings.

The Government argues that a stay of the COFC Action is necessary, because the COFC Plaintiffs are also prosecuting the District Court Action. Gov't Mot. at 10. The Government contends that the COFC Plaintiffs, in response to the Government's July 2, 2010 First Set Of Interrogatories, represented that they filed a Standard Form 95[5] with the Corps of Engineers and are putative class members in the District Court Action. Gov't Ex. 1.

In addition, the Government argues that the COFC Action and the District Court Action are based on the same operative facts, thereby depriving the United States Court of Federal Claims of jurisdiction under Section 1500.[6] Gov't Mot. at 9. Recently, in *United States v. Tohono O'Odham Nation,* ___ U.S. ___, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011), the United States Supreme Court held that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the [United States Court of Federal Claims], if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Id.* at 1731. The MR–GO Master

Consolidated Class Action Complaint in the District Court Action alleges that the Corps of Engineers' negligent design, engineering, inspection, and/or construction of the MR–GO caused the District Court Plaintiffs' damage. Gov't Mot. at 8. Likewise, the January 31, 2008 Second Amended Complaint in the COFC Action alleges that, but for the Corps of Engineers' construction, operation (expansion), maintenance, and dredging of the MR–GO, the recurrent flooding of the COFC Plaintiffs' properties would not have occurred. *Id.* at 9. Because there is substantial overlap in the operative facts of the claims alleged in the District Court Action and those alleged in the COFC Action, the COFC Action should be stayed until the District Court rules on the March 30, 2007 Motion For Class Certification, to ensure that the United States Court of Federal Claims' jurisdiction is not compromised. Gov't Mot. at 10.

The Government further explains that staying the COFC Action will not prejudice the COFC Plaintiffs, because evidence gathered during fact discovery suggests that historical flooding on their properties has been limited only to catastrophic hurricane events. Gov't Mot. at 11. In addition, a new hurricane protection system has been put in place that will provide considerable protection against the flooding of the COFC Plaintiffs' properties in the event of future storms. *Id.* Moreover, since intermittent recurring flooding issues have not occurred, granting a stay of the COFC Action will not prejudice the COFC Plaintiffs. *Id.*

Finally, continuing proceedings in the COFC Action would subject the Government to onerous and expensive litigation obligations that Section 1500 seeks to avoid, such as expert discovery and trial preparation. Gov't Mot. at 11. There is no need for the Government to assume this burden, because

---

5. A Standard Form 95 is the form used to submit a claim against a federal agency under the Federal Tort Claims Act for personal property damage or loss, personal injury, or wrongful death caused by the negligent acts of a federal government employee. *See* U.S. Army Corps of Engineers, http://www.mvn.usace.army.mil/oc/oc_claim.asp (last visited June 24, 2011).

6. Section 1500 of Title 28 of the United States Code deprives this court of jurisdiction over any claim "for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500.

when and if the District Court certifies a class, the United States Court of Federal Claims will be divested of jurisdiction. *Id.* at 12. Accordingly, the court should stay all proceedings in the COFC Action until the District Court rules on the March 30, 2007 Motion For Class Certification. *Id.*

### 2. Plaintiffs' Response.

The COFC Plaintiffs respond that application of Section 1500 depends on the Government's ability to prevail on three separate inquiries: (1) whether the COFC Plaintiffs have the same claim pending in another federal court against the Government; (2) whether that other federal lawsuit was pending at the time that the COFC Action was filed; and (3) whether the COFC Action and District Court Action both entail substantially the same operative facts. Pl. Resp. at 6.

First, the COFC Plaintiffs deny that they filed any other action against the Government. Pl. Resp. at 8. The COFC Plaintiffs have no control over the District Court Action. *Id.* at 10. Although the District Court Plaintiffs decided to pursue a class action suit and to define their putative class so that it may potentially include the COFC Plaintiffs, the COFC Plaintiffs have not elected to join any potential class that may be established in the District Court Action, and have the absolute right to opt out or decline to opt in, if and when a class is certified. *Id.* at 10 n. 7. Moreover, no existing precedent holds that the United States Court of Federal Claims is divested of jurisdiction "whenever the plaintiff before this court is an unnamed putative class member in a district court action." *Id.* at 8.

Second, the COFC Plaintiffs argue that because this action was filed first, Section 1500 does not apply. Pl. Resp. at 10. In *Tecon Engineers, Inc. v. United States*, 343 F.2d 943 (Ct.Cl.1965), the United States Court of Claims held that "the only reasonable interpretation of [Section 1500] is that it serves to deprive this court of jurisdiction . . . only when the suit shall have been commenced in the other court *before* the claim was filed in this court." *Id.* at 949 (emphasis added). Moreover, *Tecon* still has precedence. *See Tohono O'Odham Nation v. United States*, 559 F.3d 1284, 1292 (Fed.Cir.

2009), *rev'd on other grounds*, —— U.S. ——, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011) ("*Tecon* is still good law, because the aspect of *UNR [Indus., Inc. v. United States*, 962 F.2d 1013, 1021 (Fed.Cir.1992) ] that had overruled it was undone by the Supreme Court [in *Keene Corp. v. United States*, 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) ]."). For Section 1500 to divest this court of jurisdiction, the Government must identify a case involving the COFC Plaintiffs that was initiated before October 17, 2005 and involves substantially the same MR–GO claims at issue here. Pl. Resp. at 11. The MR–GO Master Consolidated Class Action Complaint in the District Court Action was filed on March 15, 2007, almost eighteen months after the COFC Action was filed. *Id.* In addition, the Amended MR–GO Master Consolidated Class Action Complaint was filed on February 28, 2008, almost two and a half years after the COFC Action was filed. *Id.* Therefore, Section 1500 is not implicated in this case. *Id.*

Third, the COFC Plaintiffs argue that the COFC Action and the District Court Action are not based on substantially the same operative facts. Pl. Resp. at 14. This court has held that "[c]laims involving the same general factual circumstances, but distinct material facts can fail to trigger Section 1500." *Branch v. United States*, 29 Fed.Cl. 606, 609 (1993). Moreover, "if a material factual difference exists between two claims, they are not the same for purposes of Section 1500." *d'Abrera v. United States*, 78 Fed.Cl. 51, 58 (2007). Although some factual overlap exists between the two cases, material factual differences preclude application of Section 1500. Pl. Resp. at 15. The District Court Action is premised upon one or two historical instances of flooding that occurred in the wake of Hurricanes Katrina and Rita. *Id.* at 16. The COFC Plaintiffs' constitutional claim is based on the risk of recurring flooding to their properties as a result of the MR–GO, not solely on prior actual flooding. *Id.* at 17. Because the COFC Action and the District Court Action are premised upon different operative facts, Section 1500 does not apply. *Id.* at 18.

Finally, the COFC Plaintiffs will be substantially prejudiced if the lengthy and indefinite stay request is granted. Pl. Resp. at 19. The parties have incurred considerable costs in time, money, and resources in conducting fact discovery and preparing for trial. *Id.* If this case were stayed indefinitely, the COFC Plaintiffs would likely have to undertake additional discovery and trial preparation when the stay expires. *Id.* More importantly, an indeterminate stay period significantly increases the risk that witnesses and evidence will become unavailable by the time trial commences. *Id.*

### 3. The Government's Reply.

The Government replies that it brought the Motion To Stay at the earliest possible time, because prior to the United States Supreme Court's decision in *Tohono,* any challenge of the court's jurisdiction under Section 1500 would have failed due to the difference in relief sought in the COFC Action and in the District Court Action. Gov't Reply at 4–5. Given the holding in *Tohono* that Section 1500 applies when both actions involve the same operative facts, regardless of the nature of relief sought, the Government's Motion To Stay is timely. *Id.* at 6. The Government confirms, however, that it is not moving to dismiss this action under Section 1500 at this time. Gov't Reply at 4. Instead, the Government is seeking a stay, because the jurisdictional limitations of Section 1500 are implicated in three ways.

First, in *Jaffe v. United States,* 215 Ct.Cl. 906 (Ct.Cl.1977), the United States Court of Claims held that Section 1500 did not bar the court's jurisdiction when plaintiffs were not named as plaintiffs in a related district court suit, and stated they would opt out of class membership in that action if the class became certified. *Id.* at 907. Unlike the *Jaffe* plaintiffs, the COFC Plaintiffs have not affirmed that they would refuse to participate in the District Court Action, if a class were certified. Gov't Reply at 8.

Second, the United States Supreme Court's decision in *Tohono* renders the *Tecon* order-of-filing rule obsolete. *See Tohono,* 131 S.Ct. at 1729–30 (observing that *Tecon* "left [Section 1500] without meaningful force," and that the United States Court of

Appeals for the Federal Circuit "was wrong to [adhere to the order of filing rule and] allow its precedent to suppress the statute's aims"). Even if the *Tohono* criticism of *Tecon* was *dicta,* the United States Court of Appeals for the Federal Circuit has instructed this court to follow the United States Supreme Court's guidance when it has spoken explicitly on a question of law. *See Ariad Pharms., Inc. v. Eli Lilly & Co.,* 598 F.3d 1336, 1347 (Fed.Cir.2010) ("[A] subordinate federal court ... may not so easily dismiss such statements [by the United States Supreme Court] as dicta but [is] bound to follow them."). In the alternative, even if *Tecon* remains controlling, Section 1500 would still be implicated here, because the "date filed" on the docket for the District Court Action is September 19, 2005. Gov't Reply at 10. In addition, the new COFC Plaintiffs named in the January 31, 2008 Second Amended Class Action Complaint joined the case more than nine months after the MR–GO Consolidated Master Class Action Complaint was filed in the District Court Action. *Id.* at 11.

Finally, both cases are based on substantially the same operative facts. Gov't Reply at 16. The allegations in both cases are "based on ... the construction, maintenance, and operation of the MRGO." *Id.* The COFC Plaintiffs only differentiate the two complaints by including allegations of recurring flooding to their properties in the January 31, 2008 Second Amended Class Action Complaint. *Id.* The United States Court of Appeals for the Federal Circuit, however, has rejected this type of distinction for Section 1500 purposes. *See Harbuck v. United States,* 378 F.3d 1324, 1329 (Fed.Cir.2004) (holding that when different manifestations of the same underlying claim account for the difference in the operative facts alleged, Section 1500's jurisdictional bar still applies).

### 4. Plaintiffs' Supplemental Brief.

The COFC Plaintiffs contend that *Jaffe* is not relevant, because it concerned two distinct grounds for denying the Government's motion to dismiss. Therefore, the court's statements regarding the class action are *dicta. See Jaffe,* 215 Ct.Cl. at 906. In addition, the court in *Jaffe* only held that Section

1500 does not apply where plaintiffs have renounced their right to participate in the related district court class action. *Id.* The court did not decide "whether and how Section 1500 would apply if the plaintiffs in the [United States Court of Federal Claims] action had not [specifically] disclaimed any interest in participating in a district court class action." Pl. Supp. Br. at 2. The Government has failed to identify any decision holding that the United States Court of Federal Claims is divested of jurisdiction when a plaintiff is an unnamed and putative class member in a district court lawsuit. *Id.*

### B. The Court's Resolution.

■ The United States Court of Federal Claims has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); *see also Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see also Cherokee Nation of Okla. v. United States,* 124 F.3d 1413, 1416 (Fed.Cir.1997) ("When and how to stay proceedings" are questions that lie "within the sound discretion of the trial court.").

■ The proponent of a stay bears the burden of establishing its need, and must "make out a clear case of hardship or inequity in being required to go forward." *Landis,* 299 U.S. at 255, 57 S.Ct. 163. The court must then "balance [the] interests favoring a stay against [the] interests frustrated by the action" in order to decide whether to suspend proceedings. *See Cherokee Nation,* 124 F.3d at 1416. The entry of a "stay so extensive that it is 'immoderate or indefinite' may be an abuse of discretion." *Id.* (quoting *Landis,* 299 U.S. at 257, 57 S.Ct. 163). Therefore, in determining whether to stay proceedings indefinitely, the trial court must find a "pressing need for the stay." *Id.* at 1416.

The United States Court of Federal Claims currently has jurisdiction to adjudicate the constitutional claims alleged in this action. The Government has neither filed a Motion To Dismiss, nor alleged that this court presently lacks jurisdiction under Section 1500. Therefore, the court need not address the merits of the underlying Section 1500 jurisdictional issues at this time.

It is possible, however, that that the court's jurisdiction could be compromised at some juncture, based on the outcome of the United States Court of Appeals for the Fifth Circuit's disposition on the merits in *Robinson,* and the nature and scope of any class that the District Court may subsequently certify. If and when a class is certified in the District Court Action that includes the COFC Plaintiffs, they will have the option to decide whether to join any such class.

This case has been ongoing for almost six years. As the parties are well aware, the undersigned judge and the District Court are, and have been, in communication with each other to coordinate the disposition of our respective cases. For this reason, the court stayed proceedings for a considerable period to afford the District Court time to adjudicate the tort claims alleged in *Robinson.*

■ The time has come for the COFC Plaintiffs to be afforded the opportunity to make a record, while key witnesses and evidence are available. With the consent of the Government, a trial on the merits has been scheduled to commence on December 12, 2011.[7] An indefinite stay of this case, based solely on the potential outcome of proceedings to which COFC Plaintiffs are not currently named parties, would significantly prejudice the Plaintiffs' right to have their claims against the Government heard in this court. For these reasons, the court has determined that the Government has failed to demonstrate a "pressing need" for a stay at this time.

---

7. In addition, at the February 25, 2011 hearing, Government counsel stated: "[I]t's the government's position that the class certification process should come after some merits resolution." 2/25/11 TR at 17.

## III. CONCLUSION.

For the reasons stated above, the Government's May 23, 2011 Motion To Stay is denied.

**IT IS SO ORDERED.**